IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LOIS A. WALLS,                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )   C.A. No. 16-245 (MN)
                                        )
NANCY A. BERRYHILL, Acting              )
Commissioner of Social Security,        )
                                        )
                    Defendant.          )

## <u>MEMORANDUM OPINION</u>

Angela Pinto Ross, DOROSHOW, PASQUALE, KRAWITZ, SIEGEL & BHAYA, Wilmington, DE – attorneys for Plaintiff

Nora Koch, Regional Chief Counsel, Heather Benderson, Assistant Regional Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, PA – attorneys for Defendant.

March 6, 2019
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE:

Plaintiff Lois A. Walls ("Walls" or "Plaintiff") appeals the decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying her claim for Social Security Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(A) and (C). The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Pending before the Court are Plaintiff's motion and Defendant's cross-motion for summary judgment. (D.I. 12, 15). Plaintiff seeks reversal of the Commissioner's decision, or alternatively, a remand to the Commissioner for proper consideration of the record. (D.I. 13 at 20). The Commissioner requests that the Court affirm the decision denying Plaintiff's claim for benefits. (D.I. 16 at 12). For the reasons stated below, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion.

I.      BACKGROUND

A.      Procedural History

On February 5, 2013, Plaintiff filed an application for Disability Insurance Benefits, alleging disability beginning May 4, 2012. (D.I. 8 ("Tr.") at 154-157). Plaintiff's claim was initially denied on May 31, 2013 and again upon reconsideration on August 16, 2013. (Tr. 96-101, 103-109). Plaintiff requested a hearing before the Administrative Law Judge ("ALJ") on September 16, 2013. (Tr. 110-111). The hearing took place on December 10, 2014 and included testimony from both Plaintiff and Christina L. Betty-Cody ("Ms. Cody"), an impartial vocational expert ("VE"). (Tr. 24). After the hearing, on February 19, 2015, the ALJ issued a decision finding that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 4, 2012, through the date of [the] decision." (Tr. 32). Plaintiff requested review of this decision on

February 20, 2015 (Tr. 18-20), which was denied on December 18, 2015, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-7).

On April 8, 2016, Plaintiff filed suit in the District of Delaware seeking judicial review of the Commissioner's denial of benefits. (D.I. 2). Plaintiff moved for summary judgment on January 30, 2017. (D.I. 12). Defendant cross-moved for summary judgment on April 3, 2017. (D.I. 15). The parties completed briefing on the summary judgment motions on April 17, 2017. (D.I. 13, 16, 17).

### B. Factual History

Plaintiff applied for Disability Insurance Benefits on February 5, 2013, when she was 55 years old. (Tr. 154). Plaintiff became unable to work May 4, 2012 at the age of 54, which is "closely approaching advanced age" as defined by 20 C.F.R. §404.1563(d). (Tr. 67). She is a high school graduate and completed specialized job training for Medical Reception. (Tr. 174). According to her Work History Report (Tr. 182-192), she held jobs as a bartender, in retail, as a stocker in a warehouse, and as a waitress in the 15 years prior to becoming unable to work.

In her February 17, 2013 pain questionnaire (Tr. 206-207), Plaintiff states that she has constant aching in her wrists and arms, constant pain that is sharp at times in her back, constant aching and restricted movement to the left and right in her neck, and constant aching in her hips, legs and feet as well as pain that is sharp. She further states that "movement in excess," cold weather and exercise make her pain worse, and that hot baths and stretching sometimes helps. (Tr. 206). She states that any activity on her feet for any length of time causes pain and forces her to sit down (which helps for a short while before she has to get back up). (Tr. 207). She states that she has to live her life around her pain. (Tr. 207). She lists oxycodone and acetaminophen as

her medications and that they are "very helpful" and give her no side effects. (Tr. 206). She is not involved in rehabilitation with the goal of returning to work either part-time or full time. (Tr. 206).

In her February 21, 2013 function report (Tr. 209-216), Plaintiff indicates that she lives alone (Tr. 209), does not take care of anyone else, has a pet that she takes care of (food, water, clean litter box), and that she does not need help with personal care. (Tr. 210). She does not need reminders to take care of herself or to remember to take her medications and she prepares her own meals (Tr. 211). She cleans, does laundry, and mows the grass about once a week – though her son sometimes cuts the grass for her. (Tr. 211). She drives a car, is able to go out alone to go shopping, and is able to handle her financial affairs. (Tr. 212-213). Her ability to do so has not changed since her conditions began. (Tr. 212-213). She goes to a relative's home about twice a month for dinner. (Tr. 213). Plaintiff indicates that her conditions affect: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair-climbing, seeing, memory, completing tasks, concentration, and using her hands. (Tr. 214). She indicates, however, that she does not have trouble paying attention and that she follows both written and spoken instructions reasonably well. (Tr. 214).

In her February 17, 2013 fatigue questionnaire, Plaintiff indicates that she has no energy, has to rest while completing tasks, takes several naps a day, gets distracted a lot, and has to write things down to remember them. (Tr. 219-220).

### 1. Disability Reports

#### a. February 7, 2013 (Form SSA-3368)

In her original Disability Report dated February 7, 2013 (Form SSA-3368 (Tr. 172-181)), Plaintiff asserts that she is unable to work because of fibromyalgia, cervical spine impairment, degenerative disc disease, lumber spine impairment, severe back pain, osteoporosis, rheumatoid

arthritis, anxiety, hypothyroidism, and chronic bronchitis. (Tr. 173). She indicates that she did

not make changes to her work activity due to her conditions. (Tr. 174). Plaintiff lists the following

relevant medications[1]: alendronate sodium (osteoporosis); cyclobenzaprine hydrochloride

(arthritis); diclofenac (anti-inflammatory); gabapentin (fibromyalgia); meloxicam (arthritis); and

oxycodone (pain), all of which were prescribed by Dr. Maged Hosney. (Tr. 176). Plaintiff lists

the Southern Delaware Medical Group[2] and Dr. Hosny[3] as providers who may have medical

records about her physical and mental conditions. (Tr. 177-180).

### b.  July 2, 2013 (Form SSA-3441)

In Plaintiff's July 2, 2013 Appeal Disability Report (Form SSA-3441 (Tr. 224-229)), she

indicates that she has had no changes (for better or worse) in her illnesses, injuries, or conditions

(Tr. 224) and that she is still treating with the Southern Delaware Medical Group and Dr. Hosny,

both for the same conditions as previously listed. (Tr. 225-226). There are no medications

indicated on the form but a remark notes that "upon request doctors will provide medications list."

(Tr. 228)

### c.  September 17, 2013 (Form SSA-3441)

In Plaintiff's September 17, 2013 Appeal Disability Report (Form SSA-3441 (Tr. 232-

236)), she again indicates that she has had no changes (for better or worse) in her illnesses, injuries,

---

[1]     The issues raised on appeal are limited to Plaintiff's medical conditions of idiopathic peripheral neuropathy and fibromyalgia, and thus the Court lists only medications that may be associated with those conditions.

[2]     Southern Delaware Medical Group is listed as treating Plaintiff for hypothyroidism, anxiety, and osteoporosis with her first visit being on January 1, 2008. (Tr. 177, 179-180).

[3]     Dr. Hosny is listed as treating Plaintiff for fibromyalgia, cervical spine impairment, degenerative disc disease, lumbar spine impairment, severe back pain, and rheumatoid arthritis with her first visit being on January 1, 2007. (Tr. 178).

or conditions. (Tr. 232). The treating physicians are listed as Dr. Hosny and Dr. Raid Kofahi. (Tr. 233). Dr. Hosny is listed as treating Plaintiff for osteoporosis, rheumatoid arthritis, fibromyalgia, and osteoarthritis. (Tr. 233). Dr. Kofahi is listed as treating Plaintiff for cervical spine impairment, lumbar spine impairment, degenerative disc disease, and carpal tunnel syndrome[4] with a first visit date of July 15, 2013. (*Id.*). The form indicates that Plaintiff is not taking any medications.

### 2. Medical History, Treatment, and Conditions

From the record, it is unclear when Plaintiff was first diagnosed with fibromyalgia. As the ALJ notes, "the claimant was diagnosed with fibromyalgia dating back to at least May 2011." (Tr. 26, 294). The relevant medical history begins on May 17, 2011 and continues through her last insured date of September 30, 2017 (D.I. 13 at 3, Tr. 24).

### a. Southern Delaware Medical Group

There are records from the Southern Delaware Medical Group in the transcript for several "encounters" from July 24, 2012 to June 11, 2014 (Tr. 262-6, 267-77, 369-404, 416). These "encounters" have the following diagnoses: hypothyroidism, osteoporosis, reflux, osteoarthrosis, chronic bronchitis (07/24/2012[5]); chronic bronchitis (08/06/2012); hyperlipidemia, hypothyroidism, anxiety state (08/24/2012); hypothyroidism, hyperlipidemia, anxiety state,

---

[4]    The Court notes that the transcript contains records for visits with Dr. Kofahi (or his practice CNMRI PA Milford) on July 15, 2013 (Tr. 475-479), September 27, 2013 (Tr. 579-583), November 25, 2013 (Tr. 439-443) and September 22, 2014 (this visit is with Dr. Jay Dave) Tr. 570-573). At the initial visit on July 15, 2013, Dr. Kofahi's "assessment" was carpal tunnel syndrome, idiopathic peripheral neuropathy, and lumbosacral radiculopathy (*Id.* at 478), yet Plaintiff does not list these conditions as "changes" in her illnesses, injuries, or conditions on her September 13, 2013 Appeal Disability Report (Tr. 232).

[5]    This "encounter" notes that Plaintiff was treating with a rheumatologist for her fibromyalgia and osteoarthritis. (Tr. 276).

osteoporosis, neuropathy, chronic bronchitis (09/16/2013); osteoporosis, hypothyroidism, hyperlipidemia (10/17/2013); hypothyroidism, hyperlipidemia, anxiety state (12/06/2013); otitis media, jaw pain, abnormal AST and ALT (01/02/2014); hyperlipidemia, hypothyroidism, leg swelling, foot pain (04/25/2014); hypothyroidism, edema, abnormal AST and ALT, leg swelling, hyperlipidemia (04/30/2014); abdominal wall hernia (05/06/2014); peripheral vascular disease of foot (05/15/2014); cellulitis (foot) (05/19-20/2014); foot pain, cellulitis of the foot, edema (06/11/2014). (Tr. 267, 370).[6]

### b. Rheumatology Center of Delaware, LLC (Dr. Hosny/NP Ashley)

The medical records in the transcript from the Rheumatology Center of Delaware, LLC ("RCD"), Dr. Hosny, and Nurse Practitioner Ashley date from May 17, 2011 to October 2, 2014.[7] Dr. Honsy saw Plaintiff on May 17, 2011, four dates in 2012, two dates in 2013, and one date in 2014. Each visit was memorialized with a "Follow-Up Visit" note to Dr. Hammer, Plaintiff's primary care physician. (Tr. 293-4, 284, 288-9, 306-7, 522-40). For the most part[8], these "Follow-Up Visit" notes to Plaintiff's primary care physician consist of "interval history" and "impression/plan" and are summarized below:

---

[6]    Plaintiff saw Pedro Perez, M.D., a cardiologist who diagnosed her with heart murmur and palpitations. (Tr. 449-51, 464-5, 502-4).

[7]    According to Plaintiff's February 7, 2013 Disability Report, her first visit with RCD was January 1, 2007. (Tr. 178).

[8]    The July 11, 2014 visit with Dr. Hosny is memorialized with a more in-depth "follow-up visit" note to Dr. Hammer. (Tr. 522-524). Plaintiff's chief complaint on this date was pain and swelling in her right foot. Dr. Hosny notes that the results of the MRI ordered by Dr. Tam (Plaintiff's podiatrist) showed evidence of neuropathic joint versus old fracture of the cuboid bone. (Tr. 523).

| Date | History | Impression/Plan | Medications |
|---|---|---|---|
| 5/17/2011[9] (Tr. 294) | History of osteoarthritis of multiple joints; secondary fibromyalgia; patient continues to do the same; daily widespread pain; worse with activities and not relieved with rest | Chronic fibromyalgia; osteoarthritis of multiple joints; patient continues to do the same | Percocet renewed |
| 2/14/2012 (Tr. 293) | History of osteoarthritis of multiple joints; chronic fibromyalgia; chronic pain syndrome secondary to above; continues to do the same with intermittent flare ups; continues to have daily widespread pain; pain is overall well controlled on the combination of Percocet and Diclofenac | Chronic fibromyalgia; osteoarthritis of multiple joints; patient continues to do the same | Diclofenac Percocet renewed |
| 5/17/2012 (Tr. 284) | Osteoarthritis of multiple joints; chronic fibromyalgia; chronic pain syndrome; continues to be dependent on Percocet to control symptoms; continues to do the same with daily widespread pain in addition to intermittent flare ups due to activities or weather; takes Diclofenac 2 or 3 times a week | Chronic fibromyalgia; osteoarthritis of multiple joints | Diclofenac Percocet renewed |
| 8/16/2012 (Tr. 289) | Osteoarthritis of multiple joints; chronic fibromyalgia; chronic pain syndrome; increased pain in lower back; bilateral trochanteric areas radiating to bilateral thighs; pain worse with activities and not relieved with rest; increased insomnia | Fibromyalgia; increasing pain in lower back and bilateral trochanteric/hip joint area; x-rays and blood work ordered - | Percocet; renewed Diclofenac and Gabapentin |

---

[9]     This note contains a "musculoskeletal exam" with tender points all over the body. (Tr. 294).

| Date | History | Impression/Plan | Medications |
|------|---------|-----------------|-------------|
| 12/7/2012[10] (Tr. 288) | Osteoarthritis of multiple joints; fibromyalgia; chronic pain syndrome; continues to do the same; having flares of pain; pain in lower back and down legs; good control on Percocet | Osteoarthritis of multiple joints; fibromyalgia | Flereril increased due to muscle spasms in lower back; Percocet |
| 3/28/2013 (Tr. 307) | Chronic fibromyalgia; chronic low back pain; continues to do the same; continues to have dull aching pain, widespread, all over body; continues to rely on multiple medications to control symptoms | Chronic fibromyalgia; chronic low back pain likely part of fibromyalgia; patient continues to do the same | Renewed Percocet and Diclofenac |
| 6/27/2013 (Tr. 306) | Chronic fibromyalgia; degenerative disc disease of lumbar spine; chronic pain syndrome; dependent on narcotics (Percocet) for pain | Fibromyalgia; degenerative disease of lumbar spine; patient continues to do the same; reduce Percocet next month; discussed need to add long acting narcotic | Percocet |

In addition to the above follow-up visit notes, Dr. Hosny wrote two "To Whom It May Concern" letters dated January 10, 2014 (Tr. 603) and June 13, 2014 (Tr. 310). In the January 10, 2014 letter, Dr. Hosny states that Plaintiff has been diagnosed with fibromyalgia and osteoarthritis; that she has daily, severe, widespread pain in joints and muscles that causes difficulty in performing daily activities; that other symptoms include insomnia, fatigue and difficulty concentrating; and that for those reasons, Plaintiff is unable to work. In the June 13, 2014 letter, Dr. Hosny states that Plaintiff has a diagnosis of osteoarthritis, fibromyalgia, and chronic pain syndrome and that she is "disabled and unable to work."

---

[10]     At this visit, there is a note that Plaintiff has lost her insurance and has applied for disability. (Tr. 288).

Between October 2013 and October 2014, Plaintiff saw Linda Ashley, FNP-BC eleven times. These visits were memorialized with "follow-up visit" notes to Plaintiff's primary care physician and are summarized below:

| Date | Chief Complaint / Reason for Visit | Exam | Medications |
|---|---|---|---|
| 10/11/2013 (Tr. 539-540) | Management of fibromyalgia, DDD L-spine and chronic pain syndrome<br><br>Dr. Kofahi ordered multiple tests: Diagnosed with carpal tunnel, disc protrusion, and herniated disc of the L-spine; base brace and physical therapy was ordered | Gait normal; no visible joint swelling; tender joints: shoulders, elbows, knees, ankles; 12 tender points; tender cervical, lumbar, thoracic spine; relies on Percocet and morphine for pain control | Percocet; Morphine, Meloxicam; Tramadol; no side effects; no new meds added |
| 11/7/2013 (Tr. 537-538) | Management of rheumatoid arthritis | Gait normal; no visible joint swelling; tender joints: shoulders, elbows, knees, ankles; no tender points; tender cervical, lumbar and thoracic spine | Tramadol, Percocet, Meloxicam, Morphine (dose increased); no new meds added |
| 12/5/2013 (Tr. 535-536) | Management of osteoarthritis, fibromyalgia and chronic pain syndrome<br>Relies on narcotics for pain relief; pain worse with activity and not relieved with rest | Gait normal; right and left upper and lower extremities positive for tenderness, swelling, crepitations, effusion, deformity; bilateral upper extremity normal range of motion; no visible joint swelling; tender joints: shoulders, elbows, knees, and ankles; 12 tender points; tender cervical, lumber and thoracic spine | Tramadol, Percocet and Morphine; no new meds added<br><br>Suggested physical and aqua therapy but patent is reluctant |

| Date | Chief Complaint / Reason for Visit | Exam | Medications |
|---|---|---|---|
| 01/09/2014 (Tr. 533-534) | Management of fibromyalgia, osteoarthritis and chronic pain syndrome<br><br>Pain is daily and widespread, worse with activity and not relieved with rest<br>Current medications effective for pain control | Gait normal; right and left upper and lower extremities positive for tenderness, swelling, crepitations, effusion, deformity; bilateral upper extremity normal range of motion; no visible joint swelling; tender joints: shoulders, elbows, knees, and ankles; 14 tender points; tender cervical, lumber and thoracic spine | Tramadol, Percocet, Morphine; prescribed Oxycodone |
| 02/14/2014 (Tr. 531-532) | Management of osteoarthritis, fibromyalgia, and chronic pain syndrome<br><br>Pain is daily and widespread, worse with activity and not relieved with rest | Same as 01/09/2014 | Tramadol, Oxycodone and Morphine; no new meds added |
| 03/13/2014 (Tr. 529-530) | Management of osteoarthritis and fibromyalgia<br><br>Pain is daily and widespread, worse with activity and not relieved with rest; most of the pain is in neck, shoulders and radiates to low back | Same as 01/09/2014 | Oxycodone and Morphine; no new meds added |
| 05/08/2014 (Tr. 527-528) | Management of fibromyalgia, osteoarthritis and chronic pain syndrome<br>Pain is daily and widespread, worse with activity and not relieved with rest; most of the pain is in neck, shoulders and low back | Same as 01/09/2014 | Oxycodone and Morphine; are effective for pain; no new meds added |

| Date | Chief Complaint / Reason for Visit | Exam | Medications |
|---|---|---|---|
| 06/12/2014 (Tr. 525-526) | Management of osteoarthritis of multiple joints, fibromyalgia and chronic pain syndrome<br><br>Pain is daily and widespread, worse with activity and not relieved with rest; most severe in neck, shoulders, low back and feet<br><br>Difficulty ambulating due to bilateral foot pain; present for more than a month | Same as 01/09/2014 | Morphine and Oxycodone; effective for pain[11]; no side effects; no new meds added |
| 08/07/2014 (Tr. 519-521) | Management of osteoarthritis of multiple joints, fibromyalgia, and chronic pain syndrome<br><br>Pain is daily and widespread, worse with activity and not relieved with rest; pain located in back, shoulders, low back, and feet; continues to treat with podiatrist for fracture<br><br>Continues to be dependent on morphine and oxycodone for pain control and denies side effects | Same as 01/09/2014 but gait and station listed as "abnormal." | Morphine and Oxycodone; no new meds added |
| 09/04/2014 (Tr. 517-518) | Management of osteoarthritis, fibromyalgia and chronic pain syndrome<br><br>Pain is daily and widespread which interferes with daily activities and sleep<br><br>Continues to be dependent on morphine and oxycodone for pain control | Same as 01/09/2014 with change to number of tender points (12). | Morphine and Oxycodone; no new meds added |

---

[11]    Under "History of Present Illness," patient claims that Morphine and Oxycodone are ineffective; however, under "Impression & Diagnosis," patient claims they are effective.

| Date | Chief Complaint / Reason for Visit | Exam | Medications |
|---|---|---|---|
| 10/02/2014 (Tr. 515-516) | Management of osteoarthritis of multiple joints, fibromyalgia and chronic pain syndrome<br><br>Pain is daily and widespread, worse with activity and not relieved with rest<br><br>Complaining of shoulder pain and requested steroid injection which have been effective in the past<br><br>Continues to be dependent on oxycodone and morphine for pain control | Same as 09/04/2014 | Oxycodone, morphine, Flexeril; left shoulder injection of Medrol and Xylocaine; no new meds added |

On October 9, 2014, Nurse Practitioner Ashley completed a Fibromyalgia Medical Source Statement ("Medical Source Statement") (Tr. 552-5). The Medical Source Statement indicates that Plaintiff has had clinical findings of x-rays of the hips which show degenerative changes and x-rays of the L-spine which show osteoarthritis and disc space narrowing. (Tr. 552). Plaintiff's symptoms are identified as "multiple tender points, nonrestorative sleep, chronic fatigue and morning stiffness." (Tr. 552). Location of pain is indicated as lumbosacral, cervical, and thoracic spine and bilateral shoulders, arms, hips, and knees/ankles/feet which is daily, widespread, aching pain. (Tr. 553). Changes in weather, stress, fatigue, movement/overuse, and cold are factors that precipitate pain. (Tr. 553). Nurse Practitioner Ashley indicates that Plaintiff can sit for 30 minutes at a time before needing to get up; stand for 20 minutes for needing to sit down or walk around; that Plaintiff can stand/walk for less than 2 hours in an 8-hour work day and can sit for about 2 hours; and that Plaintiff needs a job that permits shifting positions at will from sitting to standing to walking. (Tr. 553). Plaintiff must walk for 10 to 12 minutes every 15 to 20 minutes but a cane or other assistive device is not necessary. (Tr. 554). During a working day, Plaintiff will need to take unscheduled breaks every 15 to 30 minutes for 10 to 20 minutes and that she will need to sit

quietly. (Tr. 554). Plaintiff can rarely lift and carry less than 10 pounds, twist, stoop (bend), climb stairs and hold her head in a static position. She can never lift and carry 20 or 50 pounds, crouch/squat, or climb ladders and she can occasionally look down, turn her head right or left, or look up. (Tr. 554). The Medical Source Statement goes on to further indicate that in an 8 hour work day, Plaintiff can use her hands 25% of the time to grasp, turn, or twist objects, can use her fingers for fine manipulations 20% of the time, can use her arms for reaching in front of her body 20% of the time; and can reach over her head 10% of the time. (Tr. 555). Plaintiff is likely to be off task 25% or more of the time, is incapable of even "low stress" work, is expected to have both good and bad days, and is likely to be absent from work more than four days per month based on her impairments. (Tr. 555).

**c.**      **Consultative Examination**

On or about March 25, 2013, Plaintiff was seen by consultative examiner Ephraim A. Ayoola, M.D. at Eden Hill Medical Center, Heal Medical Group LLC. (Tr. 296-305). Dr. Ayoola's notes indicate that Ms. Walls complained of "fibromyalgia, rheumatoid arthritis, osteoarthritis, osteoporosis, [and] degenerated discs" as well as "thyroid disease and chronic pain." (Tr. 296). She rated her "pain to be 8 or 9 out of a scale of 10" and noted that "[n]o specific position impacts the pain." (Tr. 296). Dr. Ayoola's examination revealed reduced range of motion of the shoulder and lumbar spine and grip strength of 90% in both hands. (Tr. 299, 302, 304). Based on exam results and a review of Dr. Hosny's notes Dr. Ayoola lists under "DIAGNOSES": history of fibromyalgia, osteoarthritis involving multiple joints, history of hypothyroidism, history of hyper lipidemia, history of anxiety state, history of tobacco use, and chronic bronchitis. (Tr. 299). Dr. Ayoola concludes that Ms. Walls' "motor power" and gait are "normal" and she has "preserved dexterity of the use of both hands." (Tr. 300). She has the "ability to stoop or climb

13

stairs." (Tr. 300). He opines that she "has the capacity and ability to sit for 3 to 4 hours at a stretch and stand for 2 to 3 hours at a stretch in a 6 to 8 hour working period with the usual breaks" and that she can lift 20 pounds. (Tr. 300).

### d. Neurology

In July (Tr. 478, 587), September (Tr. 579-83), and November of 2013 (Tr. 574-578), Plaintiff was seen by Raid Kofahi, M.D., a neurologist. The examinations revealed decreased sensation from foot to ankles, loss of joint position sensation and absent vibratory sensation of bilateral toes, positive straight leg test and positive Tinel's sign at the wrist bilaterally. Dr. Kofahi's diagnoses include idiopathic peripheral neuropathy, lumbar spine radiculopathy and carpal tunnel syndrome with suggestions that include use of Neurontin, a back brace, and a wrist brace. (Tr. 442, 478, 582, 587). In his July 15, 2013 notes, Dr. Kofahi indicates that the pain in Ms. Walls' feet and legs is most likely due to peripheral neuropathy. (Tr. 478, 587). On September 27, 2013 Dr. Kofahi references the EMG conducted on September 3, 2013 that shows peripheral neuropathy and L5-S1 radiculopathy. (Tr. 579, 591). He also references the MRI dated August 20, 2013 revealing a large disc protrusion at L3-4 with stenosis and L4-5 stenosis and an EMG dated September 20, 2013 showing carpal tunnel syndrome right greater than left. (Tr. 579). His treatment plan included physical therapy, back brace, and Neurontin for pain. (Tr. 577, 583).

### e. Podiatry

Plaintiff saw Dr. Harry Tam, a podiatrist in 2014 for a fracture of the right foot. (Tr. 547, 568). Dr. Tam ordered an MRI of Plaintiff's right foot (dated July 10, 2014), which shows osteoarthrosis and a cuboid fracture of her foot. (Tr. 547, 568). Dr. Tam treated Plaintiff's injuries with a camboot. (Tr. 556-560). On September 11, 2014 James Lust, PA-C notes that Ms. Walls

has been using wrist splints without benefit and has a stress fracture of the right foot. (Tr. 570-572). She was given an injection of Toradol for lumbago. (Tr. 572).

### f.    Clinical Studies

In addition to clinical studies referenced above, there are records in the transcript for additional clinical studies, including: radiographic study of pelvis and hips (Tr. 290); x-rays of spine (Tr. 291, 600-1); bone density (Tr. 366); MUS looking for deep vein thrombosis (Tr. 567); MXR of foot and ankle (Tr. 564-65); and an ultrasound for a ventral hernia (Tr. 313).

### 3.    The Administrative Hearing

On December 10, 2014, the ALJ conducted an administrative hearing, at which both Plaintiff and an impartial VE, Ms. Cody, testified. (Tr. 44).

### a.    Plaintiff's Testimony

Plaintiff testified that she suffers from constant pain in her shoulders, back, hips, legs and neck, has neuropathy in her feet (which causes constant numbness and shooting pain), and carpal tunnel in both of her wrists. (Tr. 53, 54, 58, 59). While the pain ". . . never goes completely away . . . it helps . . . when [she] takes [her] pain medication . . . Morphine and Percocet." (Tr. 54). Plaintiff also takes muscle relaxers that help with her fibromyalgia (*id.*), has two arm braces for her carpal tunnel (Tr. 59), and has gotten injections in her shoulders, that give her temporary relief of ". . . maybe [a] day, day and a half." (Tr. 57).

Plaintiff further testified that she ". . . can't stand up for long periods of time or sit down for long periods of time because then it hurts worse." (Tr. 54.). She has to lie down at least 4 times throughout the day for periods of anywhere between 15 and 30 minutes. (Tr. 55). She testified that she does not sleep through the night, only getting ". . . two, maybe three hours o[f] sleep . . ." because of the pain and chronic insomnia. (Tr. 55).

Pursuant to Plaintiff's testimony, she spends her days "[w]atch[ing] soap operas." (Tr. 55). It is hard for her to ". . . run the vacuum cleaner . . . wash the walls or wash the bookcases . . . ." (Tr. 55, 56). When she is able to do things around the house, she has to take breaks in order to complete the task and is unable to get up on a step stool or ladder. (Tr. 55, 56). She is able to take short trips to run errands with the heaviest thing she can lift being a gallon of milk. (Tr. 55, 56).

### b.    <u>Vocational Expert's Testimony</u>

Ms. Cody testified about Plaintiff's past work history, which included being a waitress, warehouse supervisor, store manager, and bartender. (Tr. 61-62; 182, 193). Ms. Cody was asked by the ALJ to consider a hypothetical individual of Plaintiff's age, education, and work experience, who could perform work at a light exertion level. (Tr. 62). The ALJ stated that this individual could ". . . occasionally climb ramps and stairs, ladders, ropes, and scaffolds; . . . occasionally balance, stoop, kneel, crouch, and crawl; and . . . have occasional exposure to extreme cold, extreme heat, humidity, vibration, fumes, odors, dust, gas, poor ventilation, and hazards such as moving machinery and unprotected heights." (Tr. 62). Based on this information, Ms. Cody testified that Plaintiff could perform all of her past work. (Tr. 62). When asked if any of the skills from Plaintiff's past jobs were "transferrable to sedentary work," Ms. Cody testified in the affirmative stating that ". . . bookkeeping skills, clerical skills, knowledge of computer programs, keyboarding, and customer service" (Tr. 62) skills were all transferrable and Plaintiff could work in such positions ". . . as a bill sorter . . . an accounting clerk . . . [and] a reception clerk." (Tr. 63).

When questioned by Plaintiff's counsel regarding whether there would be full-time work for a person with the limitations set forth in Plaintiff's medical source statement (Tr. 552-555), Ms. Cody testified that a person with those limitation would not be able to work full time. Upon further questioning as to whether or not a person who ". . . was absent four or more days per month

would . . . be able to sustain work activity," Ms. Cody stated that they would not. (Tr. 64). And, finally, when asked if a person who was expected to be "off task" 25% of the day and whether that ". . . would allow for work activity," Ms. Cody said "no."

### C.    The ALJ's Findings

On February 19, 2015, the ALJ issued the following findings (Tr. 26-33):

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2017.

2.    The claimant has not engaged in substantial gainful activity since May 4, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.    The claimant has the following serve impairments: degenerative disc disease of the lumbar spine and fibromyalgia (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can only occasionally climb ramps and stairs; she can never climb ladders, ropes, and scaffolds; she can only occasionally balance, stoop, kneel, crouch, and crawl; and she is limited to only occasional exposure to extreme cold, extreme heat, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards.

6.    The claimant is capable of performing past relevant work as a waitress, warehouse supervisor, store manager, and bartender. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from May 4, 2012, through the date of this decision (20 CFR 404.1520(f)).

## II.    LEGAL STANDARDS

### A.    Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).  A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must support its assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) & (B).  If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted).  The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).  However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "If the evidence

is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## B. Review of the ALJ's Findings

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190-91. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). However, evidence that was not submitted to the ALJ can be considered by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*, 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on

review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has explained that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (*e.g.*, that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## IV. **DISCUSSION**

### A. **Disability Determination Process**

Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the Social Security Income ("SSI") program. 42 U.S.C. § 1382(a). A "disability" is defined for purposes of SSI as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520(a), 416.920; *Zirnsak v. Colvin*, 777 F.3d 607, 611-612 (3d Cir. 2014). If a finding of disability or nondisability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating finding of nondisability when claimant is engaged in substantial gainful activity); *Zirnsak*, 77 F.3d at 611. If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (mandating finding of nondisability when claimant's impairments are not severe); *Zirnsak*, 777 F.3d at 611. If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments (20 C.F.R § 404.1520, Subpart P, Appendix 1) that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Zirnsak*, 777 F.3d at 611. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *Id*. If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. *See* 20 C.F.R. §§

404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating that claimant is not disabled if claimant is able to return to past relevant work); *Zirnsak*, 777, F.3d at 611. A claimant's RFC "is the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1); *Zirnsak*, 777 F.3d at 611 (quoting 20 C.F.R. § 404.1545(a)(1)). "The claimant always bears the burden of establishing (1) that [they are] severely impaired, and . . . that it prevents [them] from performing [their] past work." *Zirnsak*, 777 F.3d at 611 (quoting *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983)).

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating finding of nondisability when claimant can adjust to other work); . At this last step, " . . . the Commissioner bears the burden of establishing the existence of other available work that the claimant is capable of performing." *Zirnsak*, 777 F.3d at 612 (citing *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)). In other words, the Commissioner ". . . is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [their] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). In making this determination, "the Commissioner uses the RFC assessment, . . . and the testimony of vocational experts and specialist." *Zirnsak*, 777 F.3d 612. "'Ultimately, entitlement to benefits is dependent upon finding the claimant is incapable of performing work in the national economy.'" *Zirnsak*, 777 F.3d 612 (quoting *Provenzano v. Comm'r*, Civil No. 10-4460 (JBS), 2011 WL 3859917, at *1 (D.N.J. Aug. 31, 2011)).

## B.    Issues Raised on Appeal

On appeal, Plaintiff raises four arguments in support of reversal for an award of benefits or of remand:  (1) the ALJ erred in "failing to consider opinion evidence and objective findings," (2) the ALJ erred "in using an improper legal standard to assess fibromyalgia and in giving no weight to opinions by treating providers," (3) the ALJ erred "in giving more weight to the opinions of non-examining reviewers than to opinions by treating providers," and (4) the ALJ erred "in failing to consider good work record in assessing credibility."  (D.I. 13).

### 1.    Medical Opinion of Dr. Kofahi and Objective Evidence

Plaintiff argues that the ALJ failed "to even mention, much less evaluate, the opinions of treating neurologist, Dr. Kofahi," including his opinion that Plaintiff's pain was "most likely due to peripheral neuropathy." (D.I. 13 at 10 (citing Tr. 442, 478, 582, 587)).  Plaintiff acknowledges that the ALJ mentioned the results of tests ordered by Dr. Kofahi and cited to certain of his exam findings but asserts the ALJ erred because he "failed to consider objective evidence that supports Ms. Walls' allegations of pain and limitations as required."  (D.I. 13 at 11).  As recognized by the Third Circuit, "consideration of all the evidence does not mean that the ALJ must explicitly refer to each and every exhibit in the record."  *Mays v. Barnhart*, 227 F. Supp. 2d 443, 448 (E.D. Pa. 2002), *aff'd* 78 F. App'x 808 (3d Cir. 2003).  While the ALJ did not specifically discuss the entirety of each medical record, that does not mean that the ALJ failed to appropriately consider all of the evidence in the record as a whole.  *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Mays*, 227 F. Supp. 2d at 449.

Here, the parties dispute whether Dr. Kofahi's notes constitute a medical opinion under 20 C.F.R. § 404.1527(a), or simply a "diagnosis."  Even if the Court were to accept Dr. Kofahi's notes as a medical opinion, however, that would not change the outcome.  According to the notes,

Plaintiff's motor examination remained normal throughout, and her gait and station were normal. (Tr. 442). Dr. Kofahi diagnosed mild carpal tunnel syndrome, idiopathic peripheral neuropathy, and lumbosacral radiculopathy. (*Id.*). He noted that Plaintiff "had no weakness in the legs specifically the right," and that there was no indication for surgical treatment. (*Id.*). Dr. Kofahi recommended conservative treatment – physical therapy, pain medication, and epidural injections (*Id.*). He did not indicate or suggest that Plaintiff was disabled and unable to return to work. To the contrary, he recommended that Plaintiff perform aerobic exercises as part of her treatment plan. (Tr. 572). Finally, it is unclear what additional limitations Plaintiff asserts are supported that were not already encompassed in the ALJ's residual functional capacity assessment. The burdens of production and proof in a disability determination proceeding rest with the claimant. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless [s]he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). "Prejudice is not demonstrated by merely speculative eventualities." *Hall v. Secretary of Health, Educ., and Welfare*, 602 F.2d 1372, 1378 (9th Cir. 1979).

### 2.     Assessment Fibromyalgia

The ALJ found Plaintiff's fibromyalgia to be a severe impairment (Tr. 26) and stated that he accommodated Plaintiff's fibromyalgia in the residual functional capacity assessment by restricting her to light work with postural and environmental limitations. (Tr. 31). Nevertheless, Plaintiff argues the ALJ used an "improper legal standard to assess fibromyalgia" because he cited a lack of objective findings. (D.I. 13 at 12-13). The Court disagrees. "Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of . . . symptoms . . . ." 20 C.F.R. §§ 404.929(c)(2), 416.929(c)(2); SSR 16-3p, 2016 WL 1119029, at*4. The ALJ "must consider whether an individual's statement's about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical

signs and laboratory findings of record." SSR 16-3p, 2016 WL 1119029, at *4. This is true even in cases involving fibromyalgia. "As with any claim for disability benefits . . . [the ALJ] must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limit the person's functional abilities that it precludes him or her from performing any substantial gainful activity." SSR 12-2p, 2012 WL 3104869, at *2 (S.S.A.). "Even in fibromyalgia cases, the ALJ must compare the objective evidence and the subjective complaints and is permitted to reject plaintiff's subjective testimony so long as he provides a sufficient explanation for doing so." *Osborne v. Berryhill*, No. CV 16-96, 2017 WL818846, at*3 (W.D. Pa. Mar. 2, 2017)) (citing *Nocks v. Astrue*, 626 F. Supp. 2d 431, 446 (D. Del. 2009)).

Plaintiff also argues that the ALJ failed to give controlling weight to Dr. Hosny's and Nurse Practitioner Ashley's opinions. (D.I. 13 at 14). The ALJ, however, discussed why he did not give controlling weight to those opinions – noting that Dr. Hosny's opinions were "vague and conclusory and lack a function-by-function analysis of the claimant's work related abilities" and were also "inconsistent" with the medical records that Plaintiff was in no acute distress. (Tr. 31-32). Similarly, the ALJ noted that Nurse Practitioner Ashley's findings were inconsistent with the medical evidence of record, which revealed (repeatedly) that Plaintiff had a normal gait, normal range of motion, normal strength, and normal muscle tone. (Tr. 32). Furthermore, as the ALJ also discussed, Plaintiff had been treated conservatively for her complaints, primarily with medication management, and that is inconsistent with Nurse Practitioner Ashley's conclusion of complete disability. (Tr. 30). *See* 20 C.F.R. § 404.1527(c) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The Court finds that substantial evidence exists to support the ALJ's weighing of those opinions

### 3.    Weight Given to Opinions

Plaintiff argues that "[t]he ALJ erred in giving great weight to the outdated opinions of the non-examining reviewers" who "were unfamiliar with later evidence in the file including the EMG showing lumbar radiculopathy and peripheral neuropathy, the medical source statement completed by NP Ashley, and the letters from Dr. Hosny (Tr. 310, 552-555, 591, 602-603)." (D.I. 13 at 17-18). The Third Circuit, however, has rejected similar arguments regarding purportedly "outdated opinions." *See Chandler v. Commissioner of Social Security*, 667 F.3d 356 (3d Cir. 2011). In *Chandler*, the Third Circuit noted that "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ's hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." *Id.* at 361.

In addition, Plaintiff argues that the ALJ did not appropriately take into account Dr. Hosny's conclusion in two letters that Plaintiff was "unable to work." (D.I. 13 at 18). The ALJ is charged with the duty of evaluating medical opinions. *See* 20 C.F.R. § 404.1527. Generally, the opinions of a treating source will be given more weight. *See id.* § 404.1527(c)(2). To receive controlling weight, however, a treating physician's opinion must be ". . . well supported by medically acceptable clinical and laboratory diagnostic techniques . . ." and must not be ". . . inconsistent with the other substantial evidence . . ." in the record. *See id.* § 404.1527(c)(2). Moreover, the ALJ is not required to accept treating source opinions uncritically and may decline to assign significant weight to such an opinion when assigning such weight would conflict with the record. *See id.*, *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing 20 C.F.R. § 404.1527(c)(2)). "[T]he ALJ is free to accept some medical evidence and reject other evidence, provided that he provides an explanation for discrediting the rejected evidence." *Zinsak*, 777 F.3d 614. The ALJ may ". . . reject a treating physician's opinion outright only on the basis of

contradictory medical evidence . . . ." *Id.* If not given controlling weight, the treating physician's opinion will be evaluated pursuant to the applicable regulatory factors, including the opinion's supportability and consistency with the record as a whole. *See* 20 C.F.R. § 404.1527. Notably, the determination of disability under the Act, which is a legal determination, is ultimately for the Commissioner, not a medical source, to make. *See id.* § 404.1527(d). In reviewing the ALJ's analysis, it is not for the Court to re-weigh the medical opinions in the record. *See Monsour*, 806 F.2d at 1190-91. Rather, the Court must determine whether substantial evidence exists to support the ALJ's weighing of those opinions. *See id.* It is, however, the ALJ's responsibility to make a decision on whether an individual meets the statutory standard of disability based on all the relevant evidence in the case record, including the medical opinions. *See* 20 C.F.R. § 404.1527(b), (e). Here, the ALJ stated his decision was made on the totality of the evidence (Tr. 24), and his analyses support that statement. (Tr. 29-32). As discussed above, the ALJ also explained why he did not give controlling weight to Dr. Hosny's letters, noting that they were "vague and conclusory and lack a function-by-function analysis of the claimant's work related abilities" and were also "inconsistent" with the medical records that Plaintiff was in no acute distress. (Tr. 31-32).

### 4. Credibility Assessment

Plaintiff objects that the ALJ did not specifically discuss Plaintiff's work record in addressing her credibility. (Pl.'s Br. at 18). Credibility assessments involve a two-step process. First, Plaintiff must provide objective medical evidence showing a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of Plaintiff's alleged symptoms to determine the extent to which they limit Plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1529(c)(2). "Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your

symptoms . . . ."  20 C.F.R. § 404.1529(c)(2).  Other relevant information includes what may precipitate or aggravate the symptoms, medications and treatments, and daily living activities. 20 C.F.R. § 404.1529(c)(3).

The Court should "ordinarily defer to an ALJ's credibility determination."  *Reefer v Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).  Here, the ALJ explained that the objective medical evidence and Plaintiff's treatment history were inconsistent with Plaintiff's claims of completely debilitating limitations.  (Tr. 31-32).  Two state agency physicians opined that Plaintiff could perform a limited range of light work, which is wholly consistent with the ALJ's findings.  (Tr. 73-76, 85-86).  In addition, as previously discussed, Plaintiff has been treated by her own doctors conservatively for her complaints, primarily through medication and recommendations for physical therapy.  Moreover, Dr. Kofahi recommended in September 2014 that Plaintiff perform aerobic exercises, which is inconsistent with a finding of complete disability.  (Tr. 572).

Plaintiff's activities also suggest that she can perform a limited range of light work. Plaintiff stated on the forms she filed to support her application for benefits that she mows the grass, does laundry, runs the vacuum, performs errands, visits her brother and daughter about twice a month, and reads.  (Tr. 209, 211-14).  She further stated that she could lift about ten pounds and reported that she does not have trouble paying attention.  (Tr. 214).

The ALJ did not wholly ignore Plaintiff's work record.  To the contrary, he noted her prior jobs in finding that she is capable of performing her past relevant work.  (Tr. 32).  As previously discussed, in light of Plaintiff's conservative treatment, the state agency physicians' assessments, and Plaintiff's admitted activities, the ALJ's decision that Plaintiff could perform a limited range of light work is supported by substantial evidence, notwithstanding Plaintiff's work record.  *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or

common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *see also Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999) (remand not necessary where a deficiency had "no practical effect on the outcome of the case").

## V.    <u>CONCLUSION</u>

Given the substantial evidence supporting the ALJ's findings, the Court concludes that neither an award of benefits nor a remand is warranted. Accordingly, the Court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment. An appropriate Order follows.